WILLIAMS, Circuit Judge,
concurring in part and dissenting in part.
Although I agree with my colleagues that VM[1] has “essentially jumped the gun” by failing to attend the second IBP meeting ordered by the hearing officer, I write separately to explain why I believe that VM must follow the process ordered by the hearing officer.[2] I also write to state my disagreement with the majority’s treatment of the district court’s decision regarding VM’s claim for compensatory education. Additionally, because VM is likely to pursue reimbursement for placing BM at the Oakland School in the future, I take this opportunity to note the proper legal standards under the IDEA to be considered when determining if a proposed parental placement is appropriate.
The IDEA requires that parties exhaust their administrative remedies before filing suit. 20 U.S.C.A. § 14150X2) (West 2000). At oral argument, VM nonetheless argued that exhaustion should not be required here because the objections made to the first IBP will likely be repeated during any future IBP meeting. In a similar situation, the Tenth Circuit explained that “nothing in the IDEA ... states that a plaintiff need not exhaust administrative remedies if his objection to a second IBP is the same as his objection to his first IBP.” Urban v. Jefferson County Sch. Dist. R-l, 89 F.3d 720, 725 (10th Cir.1996). Likewise, even assuming VM’s objections to BM’s second IBP would have been the same as the objections to the first — ie., the IBP would not recommend placement in the Oakland School — an exhaustion of remedies is still required.[3]
Because a child’s education is something near the heart of all parents, a parent *571 aggrieved by an adverse ruling in this context might find it difficult to understand the application of a rigid exhaustion requirement when the result is a possible loss of further educational opportunity. The IDEA, however, provides a panoply of procedural safeguards and administrative remedies based on Congress’ belief that courts should not “substitute their own notions of sound educational policy for those of the school authorities which they review.” Bd. of Educ. v. Rowley, 458 U.S. 176, 206, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1983). Given this Congressional intent, it would be improper to second-guess the school district’s decisions before they are made. If this system seems burdensome, the remedy lies in Congress, not the courts. Because VM “jumped the gun,” the administrative process was unable to run its course in this case. I agree with the majority that VM should convene a second IEP meeting with the school district, create a second IEP, and then, if the concerns are not resolved, institute a civil action after that IEP is reviewed at a due process hearing.
As for VM’s compensatory education claim, VM has exhausted administrative remedies. I thus dissent from my colleague’s failure to address the district court’s disposition of this claim. Compensatory education is “educational services ordered by the court to be provided prospectively to compensate for a past deficient program.” G ex rel. RG v. Fort Bragg Dependent Schs., 343 F.3d 295, 308 (4th Cir.2003). The hearing officer, in her final order, clearly stated that an award of compensatory education was improper and, as shown by the fact that the district court addressed the claim, VM’s complaint sufficiently stated a request for compensatory education. Accordingly, VM properly instituted a civil action on that claim. See 20 U.S.C.A. 1415(i)(2) (West 2000); Urban, 89 F.3d at 725 (reviewing a claim for compensatory services, after holding that other IDEA claims had not been exhausted).
The district court granted summary judgment on that claim, stating that “case law does not address the type of prospective relief being sought in this case.” (J.A. at 586.) Unfortunately, the district court did not have the benefit of our opinion in G v. Fort Bragg, 343 F.3d at 309, at the time it issued its order. In G v. Fort Bragg, we held, in accord with our sister circuits, that “the IDEA permits an award of [compensatory education] in some circumstances.” Id. Because the district court believed that claims for compensatory education were not cognizable under the IDEA, the district court did not examine the merits of the claim, and I likewise refrain from doing so. I only note that, because the hearing officer issued a final order categorically denying compensatory education, VM properly exhausted the administrative remedies with respect to that claim. I would thus reverse the district court’s grant of summary judgment on this claim and remand the claim for further proceedings in light of G v. Fort Bragg.
Finally, because VM is likely to pursue reimbursement for private educational expenses in the future, and the majority opinion does not foreclose such a possibility, I want to address two areas where the legal standards to be applied in these circumstances differ from those typically employed under the IDEA.[4] Reimbursement *572 of private education expenses under IDEA is appropriate when the reviewing court finds that: (1) the public school’s placement was not providing the child with a free appropriate public education; and (2) the parents’ alternative placement was proper under IDEA. Sch. Comm. v. Dep’t of Educ., 471 U.S. 359, 369-70, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985).
Congress passed the IDEA in order to give disabled and handicapped children access to public schools. See Sch. Comm., 471 U.S. at 373, 105 S.Ct. 1996. In Carter v. Florence County Sch. Dist. Four, 950 F.2d 156, 163 (4th Cir.1991), aff'd on other grounds, 510 U.S. 7, 114 S.Ct. 361, 126 L.Ed.2d 284 (1993), however, we held that, despite the congressional intent to give disabled children the ability to attend public school, the standard for determining the appropriateness of a parental placement in a private school is not overly stringent. We explained “when a public school system has defaulted on its obligations under the Act, a private school placement is ‘proper under the Act’ if the education provided by the private school is ‘reasonably calculated to enable the child to receive educational benefits,’ ” Carter, 950 F.2d at 163 (quoting Rowley, 458 U.S. at 207,102 S.Ct. 3034), a standard not applied by the hearing officer.[5]
Additionally, in Carter, we expressed strong doubt as to whether the least restrictive environment requirement of the IDEA, 20 U.S.C.A. § 1412(5)(A) (West 2000), applies to parental placements. Carter, 950 F.2d at 160. We noted “the school district has presented no evidence that the policy was meant to restrict parental options.” Id. (emphasis in original). Moreover, other circuits addressing the issue have held that the least restrictive environment requirement does not apply with the same force to parental placements as it does to placements advocated by school districts. See M.S. ex rel. S.S. v. Bd. of Educ., 231 F.3d 96, 105 (2d Cir.2000) (stating that mainstreaming “remains a consideration” but noting that parents “may not be subject to the same mainstreaming requirements”); Cleveland Heights-University Heights Sch. Dist. v. Boss, 144 F.3d 391, 399-400 (6th Cir.1998) (failure to meet mainstreaming requirements does not bar reimbursement). As we have explained, “the Act’s preference for mainstreaming was aimed at preventing schools from segregating handicapped students from the general student body.” Carter, 950 F.2d at 160 (emphasis in original). Although we have not definitively resolved the proper role of the mainstreaming requirement when considering parental placements, contrary to the hearing officer’s approach,[6] it is clear that requirement should not be applied in the strictest sense.
In sum, I concur in my colleague’s analysis of the reimbursement claim, but I would have clarified that the appropriate disposition of the claim is a dismissal for lack of subject matter jurisdiction. Because VM did exhaust the administrative remedies with regard to the claim for compensatory education, I would reverse the district court’s grant of summary judg- *573 merit on that claim and remand for further proceedings.

. In order to protect the privacy of the minor child and his family, I refer to the child as BM and the parents collectively as VM.

. The majority styles its opinion as an affir-mance of the district court’s grant of summary judgment, but, when a plaintiff fails to exhaust administrative remedies, the typical disposition is a dismissal of the action for lack of subject matter jurisdiction. See MM ex rel. DM v. School Dist. of Greenville County, 303 F.3d 523, 536 (4th Cir.2002). Because summary judgment is a ruling on the merits, affirming the district court’s grant of summary judgment in this case may bar VM from relitigating his reimbursement claim in a later action. See generally Grausz v. Englander, 321 F.3d 467, 472 (4th Cir.2003) (explaining that res judicata requires a prior final decision on the merits). I believe the appropriate action, consistent with the majority's approach, is to dismiss this action for lack of subject matter jurisdiction

. Although it may seem inequitable to require a second IBP meeting where a plaintiff argues that second meeting was ordered solely because of the legal errors made by the hearing officer when determining if the parental placement was proper, the IDEA does not provide an exception to the exhaustion requirement for this circumstance.

. Specifically, at the due process hearing, the hearing officer cited to an unpublished disposition dealing with residential care outside of school, Board of Educ. v. Brett Y ex rel. Mark Y, 1998 WL 390553, 155 F.3d 557 (4th Cir. 1998), for the proposition that reimbursement was proper only where the "educational benefits which can be provided through residential care are essential for that child to make any progress at all.” (J.A. at 543.) The hearing officer also believed that the least restrictive environment test, 20 U.S.C.A. § 1412(5)(A) *572 (West 2000), strictly applied to parental placements. (J.A. at 544.)

. Instead, the hearing officer applied the standard applicable when determining whether services beyond the regular school day are appropriate under the IDEA. (J.A. at 543) (citing Board of Educ. v. Brett Y ex rel. Mark Y, 1998 WL 390553, 155 F.3d 557 (4th Cir. 1998)) (unpublished) (holding reimbursement of extended school year services proper where "educational benefits which can be provided through residential care are essential for that child to make any progress at all").

. The due process hearing officer strictly applied the least restrictive environment test when reviewing VM’s request for reimbursement during the hearing. (J.A. at 544.)